## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WP 851 ASSOCIATES, L.P.,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WACHOVIA BANK, N.A.,** | : | |
| **Defendant** | : | **NO. 07-2374** |

## M E M O R A N D U M   A N D   O R D E R

PRATTER, J.                                                          JANUARY 10, 2008

### INTRODUCTION

This dispute concerns an unconsummated lease for commercial property. For the reasons
discussed below, the Defendant's efforts to short circuit the litigation altogether by way of a
dispositive motion are unavailing, but certain of the claims will be dismissed.

Early in 2007, WP 851 Associates, L.P. ("WP 851") and Wachovia Bank, N.A.
("Wachovia") engaged in negotiations concerning a lease of property where Wachovia ostensibly
planned to build and operate a bank branch. By May 2007, the negotiations collapsed, and no
deal was ever consummated. WP 851 sued Wachovia in state court alleging (1) breach of
contract, (2) fraud, (3) promissory estoppel and (4) breach of the duty to negotiate in good faith.

Wachovia removed the suit here, and shortly thereafter moved to dismiss all of WP 851's
claims pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary
judgment pursuant to Rule 56. A fairly substantial "record" is available to the Court for
evaluation of this motion because WP 851 filed numerous documents as exhibits to its
Complaint.[1] However, because no discovery has been conducted, and because numerous, critical

---

[1] In addition, Wachovia added to the record by attaching one additional piece of
correspondence to its motion. (See Def. Mot., Ex. A.)

disputes of fact exist, summary judgment is inappropriate at this time.[2]  Thus, the Court construes

Wachovia's motion as one to dismiss the Complaint, and, for the reasons provided below, the

motion to dismiss will be granted with respect to WP 851's claims of fraud and breach of the

duty to negotiate in good faith, but denied with respect to WP 851's breach of contract and

promissory estoppel claims.

JURISDICTION

 The Court has jurisdiction of this litigation under 28 U.S.C. § 1332 as the citizenship of

---

 [2] Summary judgment is not appropriate unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party.  Id. at 255.

 WP 851 asserts, among other claims, a claim for breach of contract.  As discussed more fully below, WP 851 alleges that it and Wachovia reached an agreement whereby Wachovia would lease a tract of land from WP 851 on which Wachovia planned to build a bank branch. However, the parties dispute whether an enforceable "agreement" was formed.  Wachovia argues that the parties merely engaged in negotiations concerning a potential deal but that they never executed a binding agreement, while WP 851 alleges that the parties reached an agreement as to the material terms of the lease and intended the agreement to bind both parties.  Because the issue of whether an agreement was formed is both genuine and material with respect to the breach of contract claim, this dispute is enough to preclude summary judgment on this claim at this time.  Moreover, WP 851 alternatively asserts a promissory estoppel claim, alleging that Wachovia made a promise to lease the premises from WP 851 upon which WP 851 relied to its detriment.  Because this claim depends upon resolution of at least the same disputed fact, summary judgment with respect to this claim is inappropriate at this time as well.

 Although Wachovia styled its motion as alternatively seeking dismissal or summary judgment, some of the arguments contained therein would only be appropriate at the summary judgment phase, as they would require the Court to determine questions of fact, such as parties' intentions and the "reasonableness" of certain actions, which are not ripe for resolution based on the "record" as it currently stands.  In short, such arguments do not challenge WP 851's pleadings inasmuch as they challenge the sufficiency of the evidence in the record.   With respect to the remaining claims, both parties are entitled to conduct discovery on these issues before they are presented to the Court for determination.

the parties is diverse and the amount of controversy exceeds $75,000, exclusive of interest and costs.

**FACTUAL AND PROCEDURAL BACKGROUND**

WP 851 owns real estate at 851 W. Lancaster Avenue in Devon, Pennsylvania ("premises"), which it is in the process of developing into a shopping center.  (Compl. ¶ 3.)  WP 851 alleges that in January 2007, Wachovia sought to lease approximately 1.25 acres at the premises in order to develop a Wachovia branch.  (Compl. ¶ 4.)  The parties subsequently discovered that these premises were not large enough to accommodate the anticipated bank building.  (Compl. ¶ 6.)  Accordingly, WP 851 agreed to lease two parcels of land – approximately .764 acres – from an adjoining property owner in order to accommodate the Wachovia bank building. (Compl. ¶ 6.)

On January 12, 2007, Wachovia sent WP 851, through its agent Charter Realty & Development Corp. ("Charter"), a draft letter of intent (the "Letter of Intent") outlining proposed lease terms for the premises.  (Compl. ¶ 7.)[3]  The parties never executed the Letter of Intent. However, WP 851 alleges that after it received the Letter of Intent from Wachovia, the parties "agreed" that WP 851 would lease the site to Wachovia in conformity with the "material terms" of the Letter of Intent.  (Compl. ¶ 9.)  As alleged, the "material terms" include the precise location of the premises, the term of the lease, and the amount of rent.  (Compl. ¶ 9.) Specifically, WP 851 alleges that the agreement contemplated a 20-year initial term with two, five-year renewal options, and an annual rental rate of $315,000, to be increased by $20,000

_____

[3] A copy of the Letter of Intent is attached to WP 851's Complaint as Exhibit A.  This copy includes certain handwritten notes which, according to WP 851, were added to the letter after WP 851 received it.  (Compl. Ex. A.)

every five years.  (Compl. ¶ 67.)

On January 22, 2007, Charter, on behalf of WP 851, sent an email message to Wachovia "confirming" that the parties had reached an "agreement," and requesting information regarding the preparation of a lease.  (Compl. ¶ 10.)[4]  WP 851's suit now seeks to enforce this "agreement."

On January 29, 2007, Wachovia, through its counsel, forwarded to WP 851 an initial draft "Agreement of Ground Lease" (the "Lease").  WP 851 alleges that this initial draft was consistent with the "agreement" the parties had reached, and with the terms of the Letter of Intent.  On February 20, 2007, WP 851 provided its comments on the initial draft.  WP 851 refers to the version that includes its first round of comments as the "second draft."  On March 16, 2007, Wachovia circulated a "third draft," which was a "blackline" of the initial draft that had been marked to display all changes Wachovia had input since it circulated the initial draft.  (See Compl. ¶¶ 13-20.)

On each of April 2, 2007 and April 4, 2007, WP 851's counsel informed Wachovia's counsel via email that WP 851 wished to discuss the "third draft" of the Lease.  Wachovia did not respond to either message.  (Compl. ¶¶ 38-42.)[5]  On April 4, 2007, WP 851's counsel then sent Wachovia a "fourth draft" of the Lease, which, it alleges, included only "minor, legal" comments on the Lease.  (Compl. ¶¶ 43-45.)  Wachovia's counsel responded in an email on April 5, 2007, stating that she would provide Wachovia's input on the fourth draft "shortly." (Compl.

---

[4] WP 851 attached as Exhibit B to the Complaint a January 22, 2007 email message from Dan Zelson of Charter to Bob McDevitt of Wachovia in which Mr. Zelson asked "Now that we have a deal are we doing the lease or are you?"  (Compl. Ex. B. at 2.)  In a response email message, Mr. McDevitt wrote that Wachovia would prepare the lease.  (Compl. Ex. B. at 1.)

[5] These email messages are attached to the Complaint as Exhibit J.

4

¶¶ 46-48.)[6] WP 851 alleges that Wachovia never provided comments on the fourth draft, and, over the following two weeks, Wachovia continued to promise to respond to Plaintiff's comments but never did so.  (Compl. ¶¶ 49-50.)[7]

In May 2007, Wachovia's representatives and agents informed WP 851 that Wachovia would not be leasing the premises from WP 851 because Wachovia was "presented with another opportunity."  (Compl. ¶ 54.)[8] WP 851 learned that Wachovia was finalizing the terms of a lease agreement with another property owner, intending to develop a bank branch on a different property.  (Compl. ¶ 53.)

WP 851 alleges that, prior to May 2007, it took several steps in reliance upon the "agreement" with Wachovia, including (1) obtaining land development approval for the premises (Compl. ¶¶ 21-29),[9] (2) engaging in certain due diligence efforts (Compl. ¶¶ 33-36), and, as noted above, (3) negotiating a 20-year ground lease with an adjoining property owner in order to provide the acreage necessary to accommodate the proposed Wachovia bank branch building

---

[6] This April 5, 2007 email message from Wachovia's counsel is attached to the Complaint as Exhibit L.

[7] WP 851 attached the initial draft of the Lease to the Complaint as Exhibit C, the second draft as Exhibit D, the third draft as Exhibit E, and the fourth draft as Exhibit K.

[8] An email exchange between certain representatives of both parties, dated May 1 and May 2, 2007, which followed Wachovia's decision to abandon the transaction, is attached to the Complaint as Exhibit M.

[9] WP 851 alleges that its representatives worked with Wachovia's representatives to gather information and coordinate submissions to the appropriate municipal planning commission for approval.

(Compl. ¶¶ 30-32).[10]

WP 851 contends that, unbeknownst to it, Wachovia was actually negotiating a lease for the alternative site contemporaneously while it was negotiating the Lease with WP 851, and that Wachovia used WP 851 as a "stalking horse" in order to facilitate its negotiations with other parties. (Compl. ¶¶ 57-60.) The Complaint alleges that Wachovia breached the "agreement" the parties had reached, whereby WP 851 agreed to lease the premises to Wachovia for an agreed-upon term and annual rent. In the alternative, WP 851 asserts of claims of fraud and promissory estoppel. Finally, WP 851 alleges that Wachovia breached its duty to negotiate with WP 851 in good faith.

Wachovia has moved to dismiss all of WP 851's claims. WP 851 filed a response to Wachovia's motion, and Wachovia filed an additional reply brief.

LEGAL STANDARD

To decide a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the non-movant. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A Rule 12(b)(6) motion challenging a complaint will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v.

_____

[10] The Complaint only alleges that WP 851 "would lease" this property from the (unnamed) adjoining property owner, and that WP 851 "agreed to negotiate" or actually "negotiated" a lease. (See Compl. ¶¶ 6, 30-32). WP 851 does not allege that it and the adjoining property owner actually executed a lease for this additional acreage, or that these parties otherwise reached a binding agreement.

Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

**DISCUSSION**

## I.     Breach of Contract

In its Complaint, WP 851 alleges that Wachovia breached the parties' "agreement" because it refused to lease the premises from WP 851 according to the terms of the "agreement." Wachovia argues that this claim must be dismissed because, as a matter of pleading, WP 851 has not alleged that the parties formed a contract for the lease of the premises.  Indeed, Wachovia denies that the parties reached any "agreement," written or oral, that would constitute an enforceable contract.

To state a claim for breach of contract under Pennsylvania law,[11] a plaintiff must allege (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.  Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). The important inquiry is whether the parties "manifested an intention to be bound by [a document's] terms and whether the terms are sufficiently definite to be specifically enforced." ATACS Corp. v. Trans World Commc'ns., Inc., 155 F.3d 659, 665 (3d Cir. 1998).  "Whether the parties are merely negotiating a contract, or entering into a present contract, is purely a question of intention."  Windsor Mfg. Co. v. S. Makransky & Sons, 472, 186 A. 84, 86 (Pa. 1936).

As an initial matter, Wachovia's arguments that WP 851 failed to allege that a binding agreement was reached appear to be premised upon Wachovia's mistaken belief that WP 851

---

[11] Neither of the parties suggest that any substantive law other than Pennsylvania's applies in this dispute.

seeks to enforce either the Letter of Intent or the Lease.  However, although the parties

exchanged a draft of the Letter of Intent and worked through several drafts of the Lease, in its

opposition to the defense motion, WP 851 expressly clarifies that the "agreement" it seeks to

enforce through this law suit is the separate "agreement" between the parties, as alleged in

paragraph nine of the Complaint.  WP 851 acknowledges that (1) the parties did <u>not</u> execute the

Letter of Intent, and that the Letter of Intent itself is <u>not</u> an enforceable contract; and (2) the

parties did <u>not</u> execute the Lease, and that the Lease itself is <u>not</u> an enforceable contract.

Plaintiff is critical of the defense characterization of the suit:  "Defendant fails to grasp the

simple concept that the underlying contract/promise is <u>not</u> the [Letter of Intent] (or any of the

draft lease agreements).  Plaintiff's claim is premised upon the Agreement, and the verbal

promises related to that Agreement made by Defendant's officers and agents."  (Pl. Mem. Opp'n

18-19.)  With the understanding that WP 851 seeks to enforce the separate "agreement" the

parties allegedly reached after they exchanged a draft of the letter of intent but before Wachovia

drafted a proposed lease, the Court will proceed to assess the defense motion.[12]

As a matter of pleading, WP 851's Complaint unequivocally alleges that WP 851 and

Wachovia "agreed"  that Wachovia would lease certain premises from WP 851. (Compl. ¶ 9.)

---

[12] Throughout the Complaint, WP 851 used "defined" terms to refer to certain documents
and events.  For example, the defined term for the letter of intent the parties exchanged is "LOI,"
and the defined terms for the various drafts of the lease agreement were assigned by reference to
the specific draft, e,g, "Initial Draft," "Second Draft," etc.  However, WP 851 refers to the
separate "agreement" using the defined term "Agreement."  (<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 9 (defining
"Agreement"); 10 (alleging that Plaintiff confirmed that the parties had reached the
"Agreement"); 21-36 (alleging that Plaintiff took certain actions in reliance upon the
"Agreement"); 69 (alleging that Wachovia breached the "Agreement").)  By distinguishing
between the Letter of Intent, the draft leases and the "Agreement," and clearly stating that the
parties reached an agreement apart from the Letter of Intent or the draft leases, WP 851 affirms
that the separate "agreement" is the one it now seeks to enforce.

WP 851 further alleges that the "agreement" contemplated a 20-year initial lease term with two, five-year renewal options, and specified annual rental rate. (Compl. ¶ 67.) No other details pertaining to the substance of the agreement,[13] and no details surrounding the formation of the agreement are alleged.[14] However, the fact that an agreement was reached is pleaded clearly and unambiguously. WP 851 has alleged that it and Wachovia reached an agreement to lease certain property, that Wachovia breached its duty's under the agreement, and that WP 851 has incurred

---

[13] WP 851 merely alleges that on January 12, 2007, Wachovia sent it the Letter of Intent which "outlin[ed] proposed lease terms" (Compl. ¶ 7), and that at some point "thereafter," the parties "agreed" that WP 851 would lease the premises to Wachovia "in conformity with the material terms of the [Letter of Intent]." (Compl. ¶ 9.) The Complaint alleges only three "material terms": the use of the premises, the term of the lease, and the amount of rent. (Compl. ¶ 9.)

Other than these three "material terms," no other terms are alleged. For example, according to the Complaint, there is no indication that the parties agreed when the term of the lease would begin, what the parties' respective obligations are concerning the property, or what conditions precedent must occur before the transaction closes.

Furthermore, although the "agreement" is alleged to have incorporated the "material terms" contained in the Letter of Intent, such terms as outlined in the Letter of Intent are far from clear. As a general matter, the Letter of Intent attached as an exhibit to the Complaint is a "blackline" version, which displays changes from an earlier version. It includes numerous handwritten notations, including revisions to the provisions stating the term of the lease and the amount of rent.

[14] For example, the Complaint does not explicitly state whether the "agreement" was made orally or in writing. Only in its papers submitted in opposition to the defense motion did WP 851 suggest that the "agreement" was made orally, and even that is not entirely clear. Plaintiff states that the parties reached a "separate, verbal agreement." (Pl. Mem. Opp'n 2). Plaintiff's use of the word "verbal" leaves open the possibility that the parties reached a written agreement, albeit one "consisting of words," see Mirriam-Webster's Collegiate Dictionary 1389 (11th ed. 2005), as opposed to an agreement solely composed of numbers, symbols or hieroglyphs. However, the Court presumes that WP 851 intended its use of the adjective "verbal" actually to mean "oral." Id.

In addition, the Complaint does not allege on what date the parties reached the "agreement," which representative(s) from each of the parties were the ones to have "agreed," or whether the parties reached the "agreement" in person, over the telephone, or through another medium.

damages as a result of Wachovia's breach.  Therefore, as a matter of pleading WP 851 has

adequately alleged a claim for breach of contract.

      At this procedural posture, the Court must accept as true all well-pleaded allegations in

the Complaint and view them in the light most favorable to the plaintiff.  The Court cannot state,

as a matter of law, that no relief could be granted under any set of facts that WP 851 could prove.

The pertinent inquiry is whether the parties "manifested an intention to be bound by" an

agreement, <u>ATACS Corp.</u>, 155 F.3d at 665, and WP 851 is entitled to discovery to endeavor to

prove that the parties reached an agreement, and that they intended it to be binding.

Although the Complaint provides almost no details of the alleged "agreement," the Court cannot

foreclose the possibility that certain representatives or agents of both parties orally agreed to

enter a lease agreement, the details of which would be negotiated and finalized in the imminent

future.[15]  Therefore, Wachovia's motion to dismiss WP 851's breach of contract claim is denied.

_____

    [15] WP 851 presumably recognizes it may have an uphill battle with respect to its contract claim.  It appears that WP 851 essentially claims the "benefit" of the "material terms" of the Letter of Intent, and seeks to enforce an agreement reached as to those terms, while side-stepping the Letter's "burden," namely, numerous explicit disclaimers.  For example, the Letter of Intent provides that it is "not intended to be contractual in nature" or "obligate any party contractually," and that "[n]o such obligation shall arise from this letter and any resulting Lease drafts unless and until a mutually-satisfactory Lease is fully executed by, and delivered to, all parties."  (Compl., Ex. A.)  Moreover, although WP 851 alleges that the parties agreed that WP 851 would lease the site to Wachovia "in conformity with the material terms of the [Letter of Intent]" (Compl. ¶ 9), the lead-in sentence to the section of the Letter of Intent that provides the "terms and conditions," states that such terms are "[s]ubject to Tenant's real estate committee's review and approval, and a mutually agreed upon Lease."  (Compl., Ex. A.)

    Although WP 851 states that it does not seek to enforce the Letter of Intent, at least with respect to its breach of contract claim, it is worth noting that Pennsylvania courts have found that letters of intent, used in the context of commercial real estate, are not enforceable.  Generally, when the letters of intent contained language explicitly stating that the document was not binding or containing a condition precedent, Pennsylvania courts have held that such letters did not manifest a mutual intent to be bound and were, therefore, not enforceable contracts.  <u>See, e.g.</u>, <u>GMH Assocs., Inc. v. Prudential Realty Group</u>, 752 A.2d 889, 894 (Pa. Super. Ct. 2000)

II.     **Fraud**

WP 851's Complaint alleges that Wachovia "repeatedly represented" to WP 851 that it intended to lease the premises from WP 851 in accordance with the terms of the "agreement" the parties had reached.  (Compl. ¶ 74.)  The Complaint alleges that such representations were false because Wachovia subsequently decided to lease a different site from another party.  (Compl. ¶ 75.)  WP 851 further alleges that after Wachovia decided to lease the alternative site (but before it informed WP 851 of its decision), Wachovia fraudulently represented that it intended to continue to negotiate the terms of the Lease with WP 851 when it had no intention of doing so. (Compl. ¶ 76.)

Under Pennsylvania law, fraudulent misrepresentation has six elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting

---

(agreement stated that "IN NO EVENT WILL THIS LETTER BE CONSTRUED AS AN ENFORCEABLE CONTRACT TO SELL OR PURCHASE THE PROPERTY AND EACH PARTY ACCEPTS THE RISK THAT NO SUCH CONTRACT WILL BE EXECUTED"); Philmar Mid-Atlantic, Inc. v. York Street Assoc. II, 566 A.2d 1253, 1254 (Pa. Super. Ct. 1989) (agreement stated that "This Letter of Intent is non-binding on the parties and is subject to the approval of a mutually satisfactory lease by LANDLORD and TENANT. If such lease is not negotiated and executed by the parties, they shall have no rights against each other.").

However, an essential and undetermined element here is whether these parties manifested a mutual intent to be bound.  Certainly, "where the parties have settled on the terms of an agreement, the intent to later formalize that agreement by writing does not prevent the formation of a contract," Philmar, 566 A.2d at 1255 (citing Field v. Golden Triangle Broad., Inc., 305 A.2d 689, 693 (1973)), but "[a]bsent a manifestation of an intent to be bound, . . . negotiations concerning the terms of a possible future contract do not result in an enforceable agreement." Id. (citing Goldman v. McShain, 247 A.2d 455, 458 (1968); Kazanjian v. New England Petroleum Corp., 480 A.2d 1153, 1157 (1984)).  Accordingly, the fact that WP 851 may have a challenging row to hoe does not mean they are precluded from trying to do so.

injury was proximately caused by the reliance.  Overall v. Univ. of Pa., 412 F.3d 492, 498 (3d

Cir. 2005) (citing Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994)).

Wachovia argues that the fraud count must be dismissed because (1) it is barred by the

"gist of the action" doctrine and (2) WP 851 has not adequately pleaded reasonable reliance.  In

response, WP 851 argues that the gist of the action doctrine does not bar claims for "fraud in the

inducement" of a contract, that application of the gist of the action doctrine is premature at the

motion to dismiss phase, and that the Complaint does adequately allege reasonable reliance.

A.      The Gist of the Action Doctrine

The "gist of the action" doctrine, recognized under Pennsylvania law, precludes tort

claims based on a party's failure to comply with a contract.  Interwave Tech. Inc. v. Rockwell

Automation, Inc., No. 05-398, 2005 U.S. Dist. LEXIS 37980, at *35 (E.D. Pa. Dec. 30, 2005).

The gist of the action doctrine bars tort claims: (1) arising solely from a contract between the

parties; (2) where the duties allegedly breached were created and grounded in the contract itself;

(3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a

breach of contract claim or the success of which is wholly dependent on the terms of a contract.

eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002).  However, a tort

claim will not be barred if it is "collateral" to the contract.  Id.  As such, Pennsylvania courts do

not typically bar claims for "fraud in the inducement" under the gist of the action doctrine.  Id.

WP 851 argues that at the motion to dismiss stage, alternative pleading is permissible and

allows both contract and fraud claims to proceed.  WP 851 is correct in noting that under Rule

8(d) of the Federal Rules of Civil Procedure, a plaintiff may assert alternative claims, even if

12

such claims are inconsistent.  See Fed. R. Civ. P. 8(d)(2), (3).[16]  This Court previously has stated, in determining whether fraud and contract claims should survive the gist of the action doctrine at the motion to dismiss stage, that

> Judicial caution is appropriate because "often times, without further evidence presented during discovery, the court cannot determine whether the gist of the claim is in contract or tort."  Weber Display & Packaging v. Providence Wash. Ins. Co., 2003 U.S. Dist. LEXIS 2187, No. 02-7792, 2003 WL 239141, at *3-4 (E.D. Pa. Feb. 10, 2003). In Weber, the court held that "it would be inappropriate to dismiss [plaintiff's] intentional misrepresentation claim at this stage of the proceeding, before any discovery is conducted which could aid in a determination of the 'gist' of this claim."  Id.

Interwave Tech. Inc., 2005 U.S. Dist. LEXIS 37980, at *39.  WP 851 argues that "judicial caution" is even more appropriate here because Wachovia has denied the existence of any enforceable agreement.

The Court must disagree with WP 851 here because it is readily apparent from the face of WP 851's Complaint that the "gist" of this claim sounds in contract.  Although WP 851 argues that it pleaded fraud as an alternative to its breach of contract claim, its fraud claim is premised upon, and depends upon, the existence of an agreement between the parties.  Wachovia's alleged "fraudulent misrepresentations," as pleaded by WP 851, amount to empty assurances that it would perform its obligations under the alleged "agreement" in light of Wachovia's subsequent failure to perform.  WP 851's "fraud" claim is merely another way of alleging that Wachovia made a promise and then failed to honor that promise.  The "fraud" facts are not "analytically

---

[16] Rule 8(d) provides that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).  Rule 8(d) also provides that, "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).

separable from allegations of breaches in the performance of the contract."  Interwave Tech. Inc.,

2005 U.S. Dist. LEXIS 37980, at*40-41.  In fact, as pleaded, the "fraud" allegations fulfill every

category of action that the "gist of the action" doctrine is designed to foreclose: they arise solely

from the alleged "agreement," the duty allegedly breached, i.e., the duty to lease the property per

the "material terms" of the "agreement," are grounded in the "agreement" itself, Wachovia's

potential liability would only arise from its obligations under the "agreement," and the "fraud"

claim duplicates the contract claim.  See eToll, Inc., 811 A.2d at 19.

Because WP 851's fraud claim is unmistakably and inescapably contractual in nature, WP

851's argument that its fraud claim does not relate to Wachovia's performance of its obligations

under the "agreement" is unavailing.[17]  Accordingly, Wachovia's motion will be granted with

respect to WP 851's fraud claim.

**B.     "Fraud in the Inducement"**

WP 851 also argues that Wachovia is liable for "fraud in the inducement."  The

Complaint contains two allegations that relate to the "inducement" claim.  First, WP 851 alleges

---

[17] WP 851 argues that Wachovia's "fraud" does not relate to its performance under the contract, but instead concerns the breach of a "social" duty, i.e., a duty not grounded in the contract itself but sounding in tort.  As explained above, the Court finds WP 851's fraud claim to be contractual in nature.  WP 851's characterization of its fraud claim in its opposition papers, appears to mirror WP 851's claim that Wachovia breached its duty to negotiate in good faith. WP 851 essentially concedes this point, as it states that Wachovia's "fraud" relates "solely to its breach of the social duty to engage in fair dealing" (Pl. Mem. Opp'n 14), which it defines as a duty "to act in good faith and make honest representations during the negotiations."  (Pl. Mem. Opp'n 15-16.)  For the reasons discussed below, WP 851's claim that Wachovia breached its duty to negotiate in good faith also will be dismissed.  The duty to negotiate in good faith is contractual in nature.  In other words, this duty arises when parties to a contract explicitly agree to negotiate in good faith.  WP 851 has not advanced any case law supporting the proposition that, absent an explicit agreement, Pennsylvania courts would recognize an independent "duty," arising under tort law, to negotiate in good faith.  To the extent that WP 851 attempts to characterize or color its "good faith" claim as a "fraud" claim, such a claim must fail.

that,

> It is also believed that Defendant induced Plaintiff to enter into the Agreement and negotiate the terms of a potential lease: (a) as a negotiating tool to "strong arm" a better deal to lease the Alternate Site, and/or (b) as a back-up plan in the event Defendant failed to consummate a deal to lease the Alternate Site.

(Compl. ¶ 58.)  Secondly, WP 851 alleges that Wachovia "intentionally concealed" the fact that it was negotiating with other parties "solely to induce Plaintiff to enter into the Agreement and/or negotiate the terms of Defendant's proposed lease in good faith."  (Compl. ¶¶ 82-83.)

However, WP 851's argument that it was "induced" to enter the "agreement" is paradoxical (and, ultimately, ill-fated) because all of Wachovia's allegedly fraudulent statements were made after the parties allegedly reached the supposed "agreement."  According to the Complaint, the parties reached the "agreement" some time between January 12, 2007 and January 22, 2007.  (See Compl. ¶¶ 7, 9-10.)  But the Complaint's first reference to any alleged misrepresentation by Wachovia relates to Wachovia's failure to timely comment on the fourth draft of the lease, which WP 851 circulated almost three months later, on April 4, 2007.  (See Compl. ¶ 43.)  Specifically, WP alleges that Wachovia's misrepresented its intent to respond to WP 851 regarding the fourth draft "shortly" (when, WP 851 alleges, Wachovia did not actually intend to respond).  (Compl. ¶¶ 47-53.)  These alleged misrepresentations took place on and after April 5, 2007.  The Complaint does not point to any misrepresentations, or any actionable conduct, by Wachovia that occurred prior to the formation of the "agreement."  The Court fails to see how misrepresentations that occurred close to three months after the alleged "agreement" was formed served to "induce" WP 851 to enter the "agreement."

WP 851's allegation that Wachovia "intentionally concealed" the fact that it was

negotiating a lease with a third party "solely to induce" WP 851 to enter into the "agreement" is problematic for another reason.  (Compl. ¶¶ 82-83.)  In the absence of a duty to speak, silence or "concealment" of certain facts cannot constitute fraud.  See Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999) ("It is axiomatic, of course, that silence cannot amount to fraud in the absence of a duty to speak.") (citing cases).  A "duty to speak" typically does not arise unless there is a confidential or fiduciary relationship between the parties.  Id.  A normal business relationship between sophisticated commercial entities, such as the parties to this action, does not form the basis for such a relationship unless "'one party surrenders substantial control over some portion of his affairs to the other.'" Id. (quoting Drapeau v. Joy Tech., Inc., 670 A.2d 165, 172 (Pa. Super. Ct. 1996).  There is no suggestion that Wachovia and WP 851 shared a confidential or fiduciary relationship in this case, and, consequently, WP 851's "fraudulent concealment" claim must also fail.

C.     Reliance

Wachovia argues that WP 851's fraud claim also must fail because WP 851 has failed to plead that it reasonably relied upon Wachovia's alleged misrepresentations.  Although the Court has already determined that WP 851's fraud claim must be dismissed under the gist of the action doctrine, the Court agrees that WP 851's failure to plead reasonable reliance also provides grounds to dismiss this claim.

In order to properly allege a claim for fraud, WP 851 must plead that it justifiably relied on Wachovia's misrepresentations and suffered injury proximately caused by its reliance.  See Overall, 412 F.3d at 498 (citing Gibbs, 647 A.2d at 889).  The Complaint describes the various ways in which WP 851 relied upon the "agreement," alleging that after the "agreement" was

16

reached WP 851 sought land development approval, agreed to negotiate the terms of an additional ground lease with an adjoining property owner, and responded to Wachovia's due diligence requests.  (See Compl. ¶¶ 21-36.)  As part of its "fraud" count, WP cites Wachovia's alleged misrepresentations (see Compl. ¶¶ 74-78), alleges that it performed certain tasks in reliance upon on those misrepresentations (see Compl. ¶ 80), and alleges that it incurred costs and damages from performing certain tasks in reliance upon the "agreement."  However, all of the tasks WP 851 undertook in reliance upon the "agreement" occurred before Wachovia allegedly made the misrepresentations charged in the Complaint.  Therefore, while factual allegations in the Complaint support the claim that WP 851 reasonably relied on the "agreement" to its detriment, the Complaint does not adequately charge that WP 851 relied upon Wachovia's representations.[18]

## III.    Promissory Estoppel

With respect to its promissory estoppel[19] claim, WP 851 alleges that Wachovia (1) promised to lease the premises from WP 851, (2) Wachovia should have known that WP 851 would rely on Wachovia's promises, and (3) WP 851 relied on its promises to its detriment.

---

[18] The Court has not foreclosed the possibility that discovery may provide WP 851 with cause to seek to assert a claim for fraud.  The Court's holding here is simply that the Plaintiff's Complaint, as presently pleaded, fails to state a viable claim for fraud.  As such, this claim will be dismissed without prejudice.

[19]  The doctrine of promissory estoppel can be described as follows:
Where there is no enforceable agreement between the parties because the agreement is not supported by consideration, the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment.
Crouse v. Cyclops Indus., 560 Pa. 394, 745 A.2d 606, 610 (Pa. 2000) (citing Restatement (Second) of Contracts § 90)).

17

(Compl. ¶¶ 87-89.)  As noted above, the Complaint lists the various ways that WP 851 relied to

its detriment on Wachovia's "agreement," or promise, to lease the premises.  (See Compl. ¶¶ 21-

36.)

Under Pennsylvania  law, to make a claim for promissory estoppel, WP 851 must show

that (1) Wachovia made a promise that it should have reasonably expected to induce action or

forbearance on the part of WP 851; (2) WP 851 actually took action or refrained from taking

action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.

Crouse v. Cyclops Indus., 560 Pa. 394, 745 A.2d 606, 610 (Pa. 2000); see also Universal

Computer Sys., Inc. v. Med. Servs. Ass'n, 628 F.2d 820, 824 (3d Cir. 1980) (stating that to

prevail on a promissory estoppel claim the " promise must be of such a nature and made under

such circumstances that the promisor should reasonably anticipate that it will induce action or

forbearance of a definite and substantial character on the part of the promisee.").

Wachovia argues that WP 851's promissory estoppel claim must fail because WP 851 has

not alleged reasonable reliance.  However, as a matter of pleading, the Complaint alleges the

essential elements of a claim of promissory estoppel, including the element of reliance, and

supports those elements with adequate factual underpinnings.  Accordingly, Wachovia's motion

will be denied with respect to WP 851's promissory estoppel claim.[20]

---

[20] Wachovia's primary argument that WP 851 has not "pleaded" reasonable reliance is
that WP 851's reliance under the circumstances was not "reasonable."  Specifically, Wachovia
alleges that WP 851's unreasonable "because it was based on [WP 851's] business evaluation
that it should take certain stepss such as negotiating a ground lease with the neighbor and starting
the land development approval process before it had a formal and binding agreement with
Wachovia, not on any promises by Wachovia."  (Def. Mem. Summ. J. 21.)  Wachovia goes on to
argue that a decision made based upon a party's own business judgment rather than the
defendant's representation cannot ground a promissory estoppel claim.
  Wachovia's arguments in this regard at best are premature.  The parties are entitled to the

18

**IV.      Breach of the Duty to Negotiate in Good Faith**

Finally, WP 851 alleges that it and Wachovia agreed to negotiate a lease for the building

site in good faith.  (Compl. ¶ 92.)  Wachovia argues that this claim fails as a matter of law

because WP 851 has failed to allege sufficient facts to support this claim.

Although the Pennsylvania Supreme Court has not found that a cause of action for breach

of a duty to negotiate in good faith exists under Pennsylvania law,[21] the Court of Appeals for the

Third Circuit has predicted that the Pennsylvania Supreme Court would find that an agreement to

negotiate in good faith would be enforceable if it meets the requisite elements of a contract.  See

Channel Home Ctrs. v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986).  Like the instant case,

Channel Home Centers concerned an agreement between a commercial property owner and a

prospective lessee.  Applying Pennsylvania law, the Court of Appeals inquired whether (1) both

parties manifested an intention to be bound by the agreement; (2) the terms of the agreement

were sufficiently definite to be enforced; and (3) there was consideration.  Id.  The Channel

Home Centers court found that a duty to negotiate in good faith arose from a letter of intent in

which the defendant "unequivocally promised" to withdraw a piece of property from the market,

_____

benefit of discovery in order to produce a record from which the fact-finder may determine what,
if any, representations Wachovia made, which representations in particular WP 851 relied upon,
and whether WP 851's reliance was reasonable.

[21] While the Pennsylvania Supreme Court has not spoken on this issue, on at least two
occasions the Pennsylvania Superior Court has refused to find that a letter of intent embodied an
agreement to duty to negotiate in good faith.  In GMH Associates, supra, the Superior Court held
that absent an express term regarding a duty to negotiate in good faith, or a promise to keep
property off the market, no such duty would arise.  752 A.2d 889, 903-04.   In addition, in
Philmar, supra, the Superior Court found that a letter of intent was not enforceable, either with
respect to its substantive terms, or with respect to a duty to negotiate in good faith, because it did
not include a mutual assent to be bound.  566 A.2d at 1255.

and to negotiate a lease only with the plaintiff "to completion." Id.[22]  The Court found other

indicia of an intent to be bound persuasive, including the level of detail in the letter, and the

subsequent actions of both parties.  See id. at 292, 299.

In a subsequent case, the Court of Appeals found no duty to negotiate in good faith absent

a definite term or assent to be bound.  In U.S.A. Machinery Corp. v. CSC Ltd., 184 F.3d 257, 264

(3d Cir. 1999), the court held that an oral "registration" between a broker of steel-making

equipment and a purchaser and seller of equipment did not give rise to an agreement to negotiate

in good faith, because the parties did not expressly agree to negotiate in good faith, and had not

made extensive preparations to further or consummate the transaction.  The Court of Appeals

distinguished  Channel Home Centers, noting that in the instant case, "similar indicia of intent to

be bound" was not present because there was "no 'detailed' expression of the parties' intent."

U.S.A. Mach. Corp., 184 F.3d at 264.

Channel Home Centers and U.S.A. Machinery emphasize that, in order for an agreement

to negotiate in good faith to be enforceable, the parties must manifest a specific intent to

negotiate in good faith.  Based on the Plaintiff's Complaint and its attachments, that intention is

not present here because WP 851 has not adequately pleaded that the parties here reached

agreement whereby they manifested an intent to negotiate in good faith.[23]

_____

[22] In Channel Home Centers, the pertinent provision of the letter of intent stated, "to
induce the Tenant [Channel] to proceed with the leasing of the Store, you [Grossman] will
withdraw the Store from the rental market, and only negotiate the above described leasing
transaction to completion." 795 F.2d at 299.

[23] In addition, a court within the Eastern District, relying on Channel Home Centers,
U.S.A. Machinery, GMH Associates, and Philmar, refused to find a binding agreement where the
letter at issue did not contain an express provision or unequivocal promise comparable to the one
in Channel Home Centers, but rather, actually stated that no deal would commence until a formal

Notwithstanding WP 851's explicit denial that it seeks to enforce the Letter of Intent,[24] its claim that Wachovia breached its duty to negotiate in good faith attempts to do exactly that. In the Complaint, WP 851 alleges that the agreement to negotiate in good faith is "evidenced by" the Letter of Intent. (Compl. ¶ 92.)[25] In its opposition papers, WP 851 argues that "the [Letter of Intent] constitutes a valid agreement to negotiate," which includes an implied obligation to negotiate in good faith. (Pl. Mem. Opp'n 22.)

The Court notes that Plaintiff has not alleged that the "<u>separate</u>, verbal agreement," discussed in detail above, included an agreement to negotiate in good faith. Therefore, Plaintiff's claim rests solely on its argument that the agreement to negotiate in good faith is evidenced by the Letter of Intent. However, because (1) the Letter of Intent was not executed, (2) WP 851 admits that it does not seek to enforce the Letter of Intent, and (3) the Letter of Intent does not, in fact, indicate that <u>Wachovia</u> agreed to negotiate in good faith, this claim will be dismissed.

Plaintiff does not argue specifically that the Letter of Intent constitutes or includes an agreement to negotiate <u>in good faith</u>. Rather, WP 851 argues that it constitutes a "valid agreement to negotiate," and that the facts and circumstances surrounding the parties' negotiations in this case establish that Wachovia agreed to negotiate in good faith. This

---

agreement was executed. <u>See</u> <u>Milandco Ltd. v. Wash. Capital Corp.</u>, No. 97-8119, 2001 U.S. Dist. LEXIS 20770, at *17 (E.D. Pa. Dec. 12, 2001). The court found that the letter was too indefinite to enforce, as it spoke of the deal in hypothetical terms, and contained no expression that the parties agreed to negotiate a deal in good faith. <u>Id.</u>

[24] WP 851 states that "Plaintiff does not allege that it executed the [Letter of Intent], and does not seek to enforce the unsigned document." (Pl. Mem. Opp'n 10.)

[25] In its Complaint, WP 851 alleged that "At all times material hereto, as evidenced by the [Letter of Intent], the parties agreed to negotiate a lease of the [premises] in good faith for the terms set forth in the [Letter of Intent]." (Compl. ¶ 92.)

argument is unavailing for several reasons.

First, the written terms of the Letter of Intent simply cannot support Plaintiff's claim. As the Court discussed above, see supra note 15, the Letter of Intent explicitly states that it is not enforceable. Plaintiff has admitted that the Letter of Intent itself is not enforceable.

Secondly, WP 851's reliance on the Letter of Intent is misplaced because the Letter of Intent does not require Wachovia to negotiate in good faith. To the contrary, the Letter of Intent only includes an obligation for WP 851 to negotiate in good faith. (Compl., Ex. A.) A provision on page four of the Letter of Intent reads as follows: "Landlord [WP 851] will negotiate the Lease in good faith and will not engage in negotiations with other prospective tenants for the Premises." (Compl. Ex. A, at 4.) The Letter of Intent does not include a corollary provision that would have required Wachovia – the tenant – either to negotiate in good faith or to refrain from engaging in negotiations with other prospective landlords.

Finally, contrary to Plaintiff's suggestion, the duty to negotiate in good faith is not an implicit component of every contract. The Court of Appeals' precedents require not only an intent to be bound to an agreement, but an agreement to negotiate in good faith. Simply because Plaintiff alleges that the parties reached an oral agreement to lease certain property (or to negotiate an agreement to lease certain property), Wachovia is not understood to have tacitly committed to negotiate in good faith. Far from the "unequivocal promise" that the Court of Appeals found persuasive in Channel Home Centers, in this case the Letter of Intent contains no such promise.[26] In that regard, the facts of this case resemble GMH Associates, Philmar, U.S.A.

---

[26] In Channel Home Centers and U.S.A. Machinery, the Court of Appeals examined whether circumstances surrounding the transaction at issue presented indicia of an intent to be bound. In Channel Home Centers, the court noted the fact that the parties prepared a draft lease,

<u>Machinery</u>, and <u>Milandco</u>, where the courts found that, absent an express provision or "unequivocal promise" expressing the mutual assent of the parties to negotiate a deal in good faith, such a duty will not be imposed on the parties.

## CONCLUSION

For the reasons provided above, Wachovia's motion will be granted in part and denied in part.  WP 851's claims of fraud and breach of the duty to negotiate in good faith will be dismissed without prejudice.  Wachovia's motion will be denied in all other respects.

An Order consistent with this Memorandum follows.

---

took steps with respect to architectural planning, zoning applications, and exchanged correspondence and had telephone conversations. 795 F.2d at 299.  The court stated that these other indicia supported the court's conclusion that the parties intended to be bound by a "detailed" letter of intent, which included an "unequivocal promise" to withdraw the property from the market and negotiate the transaction to completion.  <u>Id.</u> at 292, 299.

In this case, the Court acknowledges that the facts permit the inference that the parties agreed to negotiate a lease in the future.  Wachovia does not contest the allegation that it engaged in preliminary negotiations over a potential lease, although it disputes whether it was bound to negotiate the lease to completion.  As discussed at length above, four drafts of the lease were exchanged, and the parties corresponded via email and telephone numerous times.

However, the documents that WP 851 has offered in support of its claim (i.e., the documents attached as exhibits to its Complaint) do not support, and, in fact, contradict, its argument that Wachovia agreed to negotiate in good faith.  WP 851 is attempting to enforce a promise that is <u>not</u> found in a document that is <u>not</u> binding.  That claim simply does not pass muster.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WP 851 ASSOCIATES, L.P.,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WACHOVIA BANK, N.A.,** | : | |
| **Defendant** | : | **NO. 07-2374** |

**O R D E R**

   **AND NOW**, this 10th day of January, 2008, upon consideration of Wachovia

Bank, N.A.'s Motion to Dismiss, or, in the Alternative, for Summary Judgment (Docket No. 4),

WP 851 Associates, L.P.'s response thereto (Docket No. 6), and Wachovia's reply brief (Docket

No. 7), **IT IS ORDERED** that:

   1.   The Motion to Dismiss (Docket No. 4) is **GRANTED IN PART**, in that Counts II

      and IV of the Complaint are **DISMISSED WITHOUT PREJUDICE**.

   2.   In all other respects, the Motion (Docket No. 4) is **DENIED**.

   3.   Defendant shall file an Answer, or otherwise respond, to Plaintiff's Complaint

      within twenty (20) days of entry of this Order.

                              BY THE COURT:


                              S/Gene E.K. Pratter
                              GENE E.K. PRATTER
                              UNITED STATES DISTRICT JUDGE